Burket, J.
As the terms of the two leases are the •same,- except the paragraphs as to drilling the first well, the Fowler lease will be first considered in full, and then the Minard lease in so far as the paragraph as to drilling the first well causes that lease to differ from the Fowler lease.
*521 It will be noticed by a careful examination of the Fowler lease, that it has a granting clause, a habendum clause, a condition ■ subsequent or defeasance clause, and a surrender clause. The price paid, or consideration for all these clauses, that is for the whole lease, was one dollar, the receipt of which is acknowledged in the lease.
The instrument grants the oil and gas, and also the land for the purpose of operating thereon for said oil and gas, and it is therefore a lease, and not merely a license. Woodland Oil Co. v. Crawford, 55 Ohio St. 161.
The length of time for which the grant is made is not stated in the granting clause, but, as was held in Martin v. Jones, 62 Ohio St., 519, 525, the habendum clause makes definite the granting clause as to time. The words in the habendum clause are: “To have and to hold the same unto the lessee, his heirs and assigns for the term of two years from the date hereof, and as long thereafter as oil or gas is found in paying quantities thereon, not exceeding in the whole the term of twrenty-five years from the date hereof.”
This clause means that the term of the lease is limited to two years, but that if within the two years oil or gas shall be found, then the lease sháll run as much longer thereafter as oil or gas shall be found in paying quantities; but if no oil or gas shall be found within the two years, the lease shall at the end of the two years terminate, not by forfeiture, but by expiraion of term; and after the expiration of said two years no further drilling can be done under the lease; and even if oil or gas or both shall be found wdthin the two years, the whole term of the lease must ter *522 mínate at the end of twenty-five years from the date of the lease. Detlor v. Holland, 57 Ohio St., 492.
So that, by the aid given by the habendiom clause to-the granting clause, the length of the term of the lease is settled and definitely fixed.
After the length of the term of the lease is thus definitely and certainly settled, comes the condition subsequent, or defeasance clause which says: “In case no well shall be drilled on said premises within twelve months from the date thereof, this lease shall become null and void, unless the lessee shall pay for the further delay at the rate of one dollar per acre at or before the end of each year thereafter until a well shall be drilled.”
This clause clearly means that the lease may be made to~ terminate in less time than two years, that is at the end of twelve months, by a failure to drill a well on the premises within the twelve months; but that the lessee may prevent such termination of the lease at the end of twelve months by paying for further delay at the rate of one dollar per acre, at or before the end 'of each year thereafter, until a well shall be drilled. That is, the payment must be made at or before the end of the second year of the lease, and the further delay cannot be beyond the term of two years fixed as the lifetime of the lease. And the words “until a well shall be drilled,” mean until a well shall be drilled within the two years, the term of the lease. So that this clause cannot have the effect in any event to extend the lease beyond the two years definitely and certainly fixed in the habendum clause.
If this is not the clear construction of this clause, then its mfeaning is doubtful, and uncertain; and the uncertainty of this clause cannot in legal effect have the force to overcome the certainty on the same sub *523 ject in the habendum clause. Certainty in one part of an instrument will always prevail over uncertainty on the same subject matter in other parts. True an instrument must be considered and construed as a whole, taking it by the four corners as it were, and giving effect to every part; but when one part is certain on a given subject, and all the other parts are uncertain on that subject, the certain will prevail over the uncertain, even though there seems to be a general indefinite intention pervading the whole instrument to some extent inconsistent with such certainty.
Next comes the surrender clause in these words:
“It is agreed that the lessee shall have the right at any time to surrender this lease to lessor for cancellation, after which all payments or liabilities to accrue under and by virtue of its terms, shall cease and determine and the lease become absolutely null and void.”
It is urged by counsel for defendants- in error in both cases that this in legal effect makes the lessee a mere tenant at will — his own will — and it being a tenancy at will as to one party, it is so as to both, and that the lessor by giving the second lease exercised her will and terminated the lease.
It is conceded that a tenancy at the will of one party, is a tenancy also at the will of the other.
But this lease does not create a tenancy at will. Blackstone defines an estate at will as follows: “An estate at will is where lands and tenements are let by one man to another, to have and to hold at the will of the lessor.” 2 Blackstone, 145. This definition is adopted by Kent, vol. 4,110, and by writers generally, but it has been so extended as to also include estates at the will of the lessee. Doe v. Richards, 4 Ind., 374. *524 The land under this lease was not let to have and to hold at the will of the lessor, but on the contrary, to have and to hold for the term of two years. The term of two years is definite and certain, and cannot be disregarded in the construction of the lease, and this surrender clause cannot have the force to destroy the two years term and make it a tenancy at will.
The term of two years certain and this surrender-clause are not inconsistent, full force can be given to both. This surrender clause is an option, intended to enable the lessee to terminate the lease before the end of the term if it shall appear that there is no oil or gas in that territory. Under this clause the lessee can terminate the lease before the end of the term by surrendering the lease, and under the defeasance clause he can do the same by failing to drill a well and failing to pay for further delay. The right to terminate the lease in either of said ways is a valuable right to the lessee, and he paid for both by paying the one dollar mentioned as the consideration for the whole lease. Such options in contracts are sustained by courts. Thayer v. Allison, 109 Ill., 180; Woodland Oil Co. v. Crawford, 55 Ohio St., 161. The error of construing a condition subsequent, or an option, as creating the term of the lease, when that has been created by the granting and habendum clauses, has caused many decisions to be rendered whose soundness may well be doubted.
This clause gives the lessee his option, and for which he has paid, to hold the lease to the end of the term, or surrender it sooner. It is always the right of a person holding an option for which he has paid to surrender it before the expiration of the time, or to hold it for the full time; but the person who gave the *525 option canot compel a surrender before the expiration of the full time.
It is also urged by counsel for defendants in' error in both cases that the lease is void for want of mutuality. Granting that the lease was made for the purpose of operating thereon for oil and gas, and that an exclusive right to so operate was granted to the lessee, there is no want of mutuality. The lessee on his part paid one dollar, of which the lessor acknowledged receipt, and the lessee on his part made the demise, and because the lessor has performed his part in full and does not promise to do anything further, it is claimed that there is no mutuality; the claim being that mutuality requires that an obligation must rest on each party to do, or permit to be done, something in consideration of the act or promise of the other.
This is too narrow a definition of mutuality. One party may perform his part in full at the making of the contract and thereafter have nothing to do, or permit to be done, — having already done his part— and the other party in consideration of what has thus been done, binds himself to do, or permit to be done, something in behalf of the party who has thus fully performed.
A promise to perform can be no stronger than performance itself; and where one party promises to perform his part of a contract and the other performs his part at the making of the contract, both are bound and there is mutuality. The one who has performed is bound to permit his performance to stand, and the one who has not performed, is bound to perform his part, so that both are mutually bound. Performance on part of one will sustain a promise to perforin on t'he part of the other. Where there is no performance and no promise to perform on one side, a promise to *526 perform on the other side is without consideration, and without mutuality, and such a contract can be held void on either or both grounds.
In this lease the lessee paid one dollar for the lease, for the exclusive right to operate for oil and gas, and thereby fully performed his side of the contract; and the lessor granted that right under the terms and conditions of the lease, and thereby a contract was made, and the party on one side received the one dollar in full, and the party on the other side received the demise, and then both were mutually bound, and both bad to trust to the future for the realization of the purpose for which the lease'was made.. So that there is no want of mutuality, and in that respect the lease is valid.
From the findings of fact it appears that no well was drilled on the premises in the Fowler lease, and no oil produced within two years, from the date of the lease, and as the payment deposited in the bank on the first day of December, 1898, had only the effect to keep the lease alive until the eighth day of December, 1898, it follows that the lease terminated on that day by reason of expiration of the term of two years expressed in the lease, and that from and after the eighth day of December 1898, the plaintiffs in error had no right to drill upon the Fowler lease, or occupy the lands under that lease for any purpose. This disposes of the controversy as to the Fowler lease, and what is said above as to the granting clause, the habendum clause, and the surrender clause in the Fowler lease, is also applicable to the Minard lease, because as to those matters the two are the same. What is said above as to the construction of instruments when one part is certain, and another part on the same subject uncertain, is also applicable to the Minard lease.
*527 In the case of Brown v. Oil Company, supra, the lease is on one hundred acres of land and was executed on November 12,1896, by one Minard and wife to said H. A. Snyder, and came to said plaintiffs in error by assignments, and all were duly recorded. The lease was for two years, and was upon the same blank form as the Fowler lease to Snyder, and was word for word the same as the Fowler lease, except the date, the description of the lands, and the paragraphs as to when a well should be drilled.
On February 3, 1899, the Ohio Oil Company took a lease of the same premises for oil purposes, and the same was duly recorded, and is conceded to be valid if the first lease by Minard and wife to Snyder is invalid.
The petition for injunction by plaintiffs in error was filed February 15, 1899, and the same legal proceedings were had as in the Fowler case, and upon trial on appeal in the circuit court the material.facts found are as follows:
“4. No oil or gas well had been drilled by said lessee, H. A. Snyder, or his assignees, bn said leased premises within two years from the date of said lease, and no oil or gas has been found thereon; nor has said lessee or his assigns taken any possession or done any work on said premises within said two years, but, on December 22, 1898, the Scio Oil and Gas Company, then the owner of the lease in question, deposited in the Scio Bank to lessor’s credit the sum of one hundred dollars to pay for the further delay in drilling a well on said premises for another year.
“5. That the lessors refused to accept said money so deposited, and the same still remains on deposit as stated, claiming that said lease had been forfeited and was void.
*528 “8. That the defendant, The Ohio Oil Company, upon procuring its said lease, immediately began operations to drill for oil on said premises, and was, at the time of the commencement of this action, actively engaged in such work.
“9. That the plaintiffs herein, upon hearing of the execution of said lease to the Ohio Oil Company and its action thereunder, immediately commenced this action, and, on February 16,1899, caused a temporary injunction to be issued against defendants, and thereupon the plaintiffs began a well on said premises under their lease, and continued such operations until stopped by the temporary injunction allowed against them on the cross-petition of defendants on February 20, 1899.”
Said lease taken by the Ohio Oil Company contains the. following:
“This lease is taken with full knowledge of a prior lease executed by Daniel Minard to H. A. Snyder on the premises dated November 12, A. D. 1896, which lease the grantors have here declared to be null and void.”
The circuit court rendered judgment in favor of defendants in error, also defendants below, and thereupon plaintiffs in error brought the case here seeking to reverse the judgment of the circuit court.
Can this lease be ruled differently from the Fowler lease? The granting and habendum clauses being the same as in the Fowler lease must be construed the same, and that construction is, that no drilling could be done after the expiration of the two years term of the lease, unless oil or gas should be found within the two years. No oil or gas having been found within the two years, the term of the lease expired at the end of the two years, and the provision as to the con *529 tinuing of the lease thereafter as long as oil or gas should he found in paying quantities, not exceeding twenty-five years, never became effective, and the term was limited to two years as effectually as if the two years term had alone been mentioned in the habendum clause.
The term of the lease being thus definitely fixed at two years in the habendum clause, the condition subsequent, or defeasance clause, is added as follows: “In case no well shall be drilled on said premises within two years from the date hereof, this lease shall become null and void, unless the lessee shall pay for the further delay at the rate of one dollar per acre at or before the end of each year thereafter, until a well shall be drilled.”
At first blush, aptd without having considered the construction of a like lease in which the first well was to be drilled within one year, there would be an inclination to hold that under this subsequent clause, in case no well should be drilled within two years, further time in which to drill might be had by paying one dollar per acre at or before the end of the year next after the two years, but upon a more careful examination of that clause, and the rules of construction applicable to such cases, it is clear that such is not the proper construction of the lease.
By the clear, certain and fixed terms of the granting clause, as made definite by the habendum clause, there being no oil or gas found in two years, the lease was to end at the expiration of that time, and after that time there was no right to drill. With this certainty as to the end of the lease, and as to the end óf thé right to drill, can the words of this subsequent clause, which says that if no well shall be drilled in two years, *530 the lease* shall become null and void, unless the lessee shall pay for further delay one dollar per acre by the end of the next year, have the force and effect to extend theterm of the lease, and give further timein which to drill? We think not. The lease and right to drill were to terminate definitely at the end of two years, clearly so stated in the habendum clause, and the provision in the subsequent clause that the lease should become null and void in case no well should be drilled within two years, was not intended to fix a different, or longer period for the termination of the lease, than that fixed in the habendum clause, but left the period as fixed in that clause. There was no need of saying that the lease should become null and void if no well -should be drilled in two years, because by the force of the habendum clause the lease and right to drill would terminate at the end of two years, if no well should be drilled within that time as oil or gas could only be found by drilling a well, and therefore the two years in this subsequent clause is only a repetition of the two years mentioned in the habendum clause, and leaves the lease to terminate and become null and void at the end of the two years thus definitely fixed. And that definite term of two years cannot be wiped out and superseded by the indefinite' words, “unless the lessee shall pay for the further delay at the rate of one dollar per acre at or before the end of each year thereafter, until a well shall be drilled.”
No right is given in any part of the lease to drill a well after two years, and no time is fixed in this clause when such well shall be drilled. It is not specified how much further delay for drilling may be had by such payment, or when such drilling shall begin or end. In case the clause had gone further and provided that in case such payment should be made the *531 right to drill under the terms of the lease should be extended to some definite time, force and effect could be given to the clause, but as it is, it is incomplete and fails to state what shall follow such payment. To give this “unless” clause its greatest force, it only saves the lease from becoming null and void by reason of no well having been drilled within two years, but with that saving as to this clause, the lease still terminated and expired at the end of the two years expressed in the habendum clause, and this “unless” clause does not pretend to control or extend the habendum clause. The extreme limit of twenty-five years cannot be made applicable to the term to be worked out under this “unless”’ clause, because that limit can only be invoked, in case oil or gas shall be found in the two years in which drilling can be done. So that there is nothing in the lease to which this “unless” clause can be attached to work out a lease as to time or terms, and therefore this indefinite clause is not of sufficient force to overcome and supersede the definite parts of the lease.
It is a rule of construction of written instruments that, that which is made certain in one part, cannot be overcome and changed by words in another part, unless such other words are of equal or greater certainty. 11 is not often that this rule must be applied in ,the construction of instruments, but we regard it applicable here, and'that the proper construction is that the Minard lease terminated at the end of two years from the date thereof.
As contended by counsel for plaintiffs in error, there seems to be something pervading this lease to indicate an intention that there should be some elasticity beyond the two years, but if the parties had such intention, they failed to insert the terms of such elasticity *532 in the lease, and the court must take the lease as they made it, and cannot make that definite and certain which they left indefinite and uncertain. This would he to make a new lease for them. When the definite term of two years is fixed and the other terms of the lease fit thereto, a court cannot safely grope around through indefinite expressions, and guess what the parties may possibly have intended thereby, and thus ignore and disregard that which is fixed and certain.
This indefinite “unless” clause, cannot form the basis for a new contract between the parties, to be entered into at or near the end of the two years, and to be thereafter recorded. The judgments below are right, and are,

Affirmed.

Williams, Spear, Davis and Shauck, JJ., concur.